THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv063

| | |
|---|---|
| LYN T. MCFALLS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Judgment on the Pleadings [Doc. 9].

## I. PROCEDURAL HISTORY

Plaintiff Lynn McFalls filed an application for a period of disability and disability insurance benefits on October 16, 2007, alleging that she became disabled as of May 14, 2007. [Transcript ("T.") 110]. Plaintiff later amended her alleged onset date to February 8, 2008. [T. 22]. Plaintiff's application was denied initially and on reconsideration. [T. 51-53, 40-43]. A hearing was held before Administrative Law Judge ("ALJ") S.D. Schwartzberg on March 9,

2009. [T. 19-35]. On March 24, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 10-18]. The Appeals Council accepted additional evidence into the record, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-4]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment

3

is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTUAL BACKGROUND

Plaintiff was 50 years old at the time of the ALJ hearing. She had completed the twelfth grade. [T. 22-23]. Her past relevant work included twenty-two years in manufacturing, ten years at Champion Products as a senior mechanic and twelve years at Sonopress, where she performed various standing jobs. [T. 24-25].

Plaintiff received treatment from Dr. Michael J. Goebel of the Blue Ridge Bone and Joint Clinic for carpal tunnel syndrome from May 2006 through January 2007. Plaintiff underwent carpal tunnel release surgery on the left

arm in June 2006 and on the right arm in August 2006. [T. 183-87 ; 188-92]. She was referred to physical therapy following her surgeries. [T. 337-59]. By January 2007, she had returned to light duty work, and it was noted that she was doing quite well. [T. 214-52].

Dr. Goebel also treated Plaintiff for complaints of low back pain and leg pain from May 2007 through December 2007. On May 16, 2007, Plaintiff presented with a complaint of right posterior hip pain radiating into the foot with associated numbness. On examination, her standing posture was bent kneed, and her gait was slightly antalgic. X-rays showed mild scoliosis and a quarter inch difference in leg length. She was fitted for a shoe lift. [T. 242, 225-26]. An MRI performed on May 23, 2007 revealed mild degenerative disc disease at L2 through S1 and moderate spinal canal neuroforaminal narrowing at L4-5. Dr. Goebel treated Plaintiff with medications and epidural steroid injections, but these treatments did not provide any long-term relief. [T. 195, 199, 205]. In October 2007, Plaintiff underwent L4 and L5 laminectomies and posterolateral fusion with iliac crest bone graft and instrumentation. [T. 201]. Plaintiff tolerated the procedure well. By October 16, 2007, Plaintiff had "nothing significant in terms of pain within the legs" and was tapering off her pain pills. [T. 214]. She returned to full duty work on January 14, 2008. [T. 261].

5

Dr. Gail Hyde of Hygeia Family Medicine treated Plaintiff intermittently for back pain from February 2008 through December 2008. On February 12, 2008, Plaintiff reported that she went back to work on a new machine and that she had pulled her back, shoulders and legs. She further reported numbness in her thigh and right leg weakness. On examination, Dr. Hyde noted that Plaintiff had tenderness in the lumbar spine area. She diagnosed Plaintiff with sciatica and back pain. [T. 292]. On February 21, 2008, Plaintiff called and requested a referral to physical therapy. Records show that Plaintiff was evaluated for physical therapy on March 4, 2008, but never attended an appointment. [T. 345]. When she returned to see Dr. Hyde on March 20, 2008, she reported numbness and tingling in her right leg. Dr. Hyde noted no abnormalities on examination. She advised Plaintiff to continue physical therapy and to get a job assessment. [T. 293].

On June 16, 2008, Plaintiff asked Dr. Hyde for a referral to Spine Carolina for an evaluation of her sciatic pain. She was advised to get an MRI first. [T. 276]. An MRI performed on June 24, 2008 showed "no evidence of recurrent or residual disc herniation," "no postop complications," and "no change" from the May 23, 2007 MRI. [T. 295].

On October 22, 2008 Plaintiff was evaluated by William Kraak, PA-C of Spine Carolina. He noted that Plaintiff previously had surgery and that while

her preoperative lower extremity symptoms were much improved, she continued to have some back pain with pain in the buttocks and thighs. He noted that the June 2008 MRI did not show any evidence of recurrent or residual disc herniations and no postoperative complications, and that x-rays of her spine showed a solid healed L4-L5. On examination, he noted that Plaintiff demonstrated non-tender range of motion without obvious deformity in the hips, knees, and ankles. Plaintiff's balance and flexion were within normal limits. He further noted that Plaintiff had a normal ambulatory gait and that she was able to toe walk. Plaintiff's strength was measured as five on a five point scale in all motor groups of both lower extremities. Her sensation was intact, and straight leg raising testing was negative. His impression was healed posterior lumbar instrumented fusion at L4-5 with resolution of her radicular preoperative pain and persistent low back pain with pain into the buttocks and proximal thighs. He recommended physical therapy and, if that was not helpful, a referral to a pain management specialist. [T. 278-83].

Plaintiff returned to see Dr. Hyde in December 2008. An examination showed only mild straight leg raising testing on the right and bilateral lumbar tenderness. [T. 276]. On December 4, 2008, Dr. Hyde filled out a disability form provided by Plaintiff's counsel. On this form, Dr. Hyde expressed the

7

opinion that Plaintiff has a condition that affects her ability to work and that the condition was supported by the October 2007 MRI demonstrating lubar disc disease with spinal stenosis. [T. 362]. Dr. Hyde adds that Plaintiff subseqently underwent surgery to resolve this condition but continued to report trouble with activities such as walking, sitting, and lying down. [Id.]. Dr. Hyde, however, declined to give any opinions regarding Plaintiff's functional limitations or as to whether Plaintiff was disabled, stating that such questions needed to be answered by specialists. [T. 362-65].

Records of Appalachian Foot and Ankle Associates show that in 2002, the Plaintiff underwent surgical removal of a painful neoplasm in her plantar left heel. [T. 326]. The wound did not heal well, requiring substantial additional treatment of ulcerations that were not fully resolved as of her last appointment in August 2002. [T. 302]. She returned on July 15, 2008 with pain in the heel that felt "like stepping on a rock." She was assessed with benign soft tissue mass, painful scar, and pain in the limb. [T. 300]. The pain persisted, and on October 8, 2008, the wound was debrided and excision of the lesion was discussed. [T. 299]. The records do not indicate, however, that Plaintiff sought or required any further treatment since that time.

8

Dr. Melvin Clayton completed a physical residual functional capacity (RFC) assessment for Disability Determination Services on February 29, 2008. After reviewing the medical evidence of record, Dr. Clayton concluded that Plaintiff was capable of performing medium work. [T. 268-75].

At the ALJ hearing, Plaintiff testified that sharp pain in her back, legs and feet prevented her from standing or from sleeping more than four or five hours at a time. She stated that this pain was not completely relieved by pain medication. Plaintiff further testified that carpal tunnel syndrome in both hands caused pain. As a result as this condition, she testified that she would drop things like coffee cups and milk jugs. She further reported headaches were constant, but stated that these were alleviated by medication. [T. 27-28]. With respect to activities of daily living, Plaintiff testified that she could no longer perform her any of her prior hobbies or sports. She stated that her nephew helps with household chores. [T. 29]. She reported that she walks up and down her driveway three or four times a day. She stated that she does not like having company, but that she talks on the phone with friends. [T. 31].

In addition to Plaintiff's testimony, the ALJ also received letters from Plaintiff's relatives and friends to support her claim of disability. [T. 367-71].

Dr. Robert S. Spangler was sworn to testify as a vocational expert (VE) at the ALJ hearing. He classified Plaintiff's past relevant work as medium skilled, and light semi-skilled, respectively. In response to the ALJ's hypothetical questions, the VE opined that a worker limited to medium work with occasional postural limitations and simple, routine, repetitive work could perform 70% of the 78,340 medium exertional level jobs in the region. He specifically identified food prep worker, food service/concession stands worker, dishwasher, janitor, non-farm animal care worker, and childcare worker as jobs that could be performed with these limitations. [T. 33]. The VE further opined that a worker limited to light work with occasional postural limitations and simple, routine, repetitive work as well as a sit/stand option would be able to perform 70% of the 119,843 light exertional level jobs in the region. He specifically identified crossing guard, food prep worker, cafeteria line worker, bartender's helper, light maid, and non-animal farm care worker as jobs that could be performed with these limitations. [T. 33-34].

## V. THE ALJ'S DECISION

On March 24, 2009, the ALJ issued a decision denying the Plaintiff's claim. [T. 10-18]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2012 and that she had not

engaged in any substantial gainful activity since February 8, 2008, the alleged onset date. [T. 12]. The ALJ then determined that Plaintiff has the following severe impairments: musculoskeletal impairments related to her chronic low back, buttock and thigh pain; leg length discrepancy; history of carpal tunnel syndrome status post surgery; and benign soft tissue mass of the left plantar heel, but that these impairments do not meet or equal a listing. [T. 12, 14].

The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform simple, routine repetitive light work that does not require greater than occasional postural activities and that allow a sit/stand option. [Id.]. He found that Plaintiff was unable to perform her past relevant work. [T. 16]. He further determined that Plaintiff has a high school education. [T. 17]. The ALJ found that for a period after onset, Plaintiff was a younger individual and that later she changed age category to closely approaching advanced age. [Id.]. Transferability of job skills was not material. [Id.]. At step five, the ALJ considered the VE testimony elicited at the hearing and concluded that significant work existed in the national economy that Plaintiff could perform. [Id.]. Accordingly, he concluded that the Plaintiff was not disabled from February 8, 2008 through the date of his decision. [T. 18].

11

## VI.   DISCUSSION

Plaintiff asserts three assignments of error.  First, she contends that the ALJ erred in the evaluation of her credibility.  Second, she argues that the ALJ erred in considering the evidence of Dr. Hyde, her treating physician.  Finally, she contends that the ALJ erred in relying on the testimony provided by the VE at the hearing.

### A.   **The ALJ's assessment of Plaintiff's pain and symptoms followed applicable law and is supported by substantial evidence**.

Plaintiff first contends that the ALJ erred in overstating her activities of daily living and understating her medical condition to reach his determination that her allegations of pain and other disabling symptoms were not entirely credible.  Plaintiff further contends that the ALJ erred in rejecting the statements of her friends and relatives regarding the effects of her disabling pain.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process.  "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (citing 20 C.F.R.

§ 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1)).

While the ALJ found that Plaintiff had severe conditions that reasonably could be expected to cause pain, he nevertheless found that her allegations of disabling pain and other limiting symptoms were not entirely credible. [T. 16]. There is substantial evidence to support this finding. As the ALJ found, the medical evidence of record shows only minimal treatment and minimal objective findings during the relevant period. See Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994) (noting allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers").[1] Moreover, none of Plaintiff's treating physicians placed any permanent restrictions on her or otherwise indicated that she was totally disabled at any time. While Plaintiff continued to receive treatment for back

---

[1]Plaintiff suggests that the "minimal treatment" of record may have been a function of the workers' compensation, a lack of funds on her part, and the quick demise of her husband [Doc. 8-1 at 13], but these suggestions are sheerly speculative and have no support in the record.

13

and leg pain following her surgery, a 2008 MRI showed no evidence of recurrent or residual disc herniation and no postoperative complications. While physical therapy was recommended, Plaintiff did not comply with this recommendation, nor did she seek a referral to a pain clinic. See id. at 930 ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). Further, Plaintiff's own description of her activities of daily living, which included cleaning, driving, walking, and caring for her ailing husband, indicates that Plaintiff was capable of a greater degree of exertional function than she claimed.

Plaintiff argues that the ALJ erred in rejecting the statements of her friends and relatives regarding her disabling condition. As the ALJ properly noted, however, these lay statements appear to have been written for the purpose of assisting Plaintiff in obtaining disability benefits rather than providing objective observations for the record. See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ therefore did not err in rejecting this evidence.[2]

---

[2] It is also noted that at least one letter contradicts Plaintiff's claim that she no longer engages in hobbies. [T. 29, 370]. Such contradiction would, of course, also be relevant to the ALJ's determination of Plaintiff's credibility.

14

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Plaintiff points to no evidence of greater limitations than those found by the ALJ, and it is her burden of proof to do so. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.1983). The record amply supports the ALJ's findings of fact. Given the deference due to the ALJ's credibility determination, the Court finds that the ALJ's analysis of pain and symptoms at step four followed applicable law and is supported by substantial evidence. For these reasons this assignment of error is overruled.

**B. The ALJ's evaluation of medical source evidence followed applicable law and is supported by substantial evidence.**

Plaintiff argues that the ALJ erred in failing to give proper weight to the opinion of her treating physician, Dr. Hyde.

The opinion of a claimant's treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984); 20 C.F.R. § 404.1527(d)(2).

15

As the ALJ found, "[n]o treating physician has placed any permanent restrictions on the claimant nor indicated that she was totally disabled at any time during the period at issue." [T. 16]. Dr. Hyde explicitly declined to opine about Plaintiff's functional limitations or about the ultimate issue of disability, instead deferring to Plaintiff's specialists. At best, Dr. Hyde's assessment can be read as imposing a sit/stand option, a limitation included in the ALJ's assessment of Plaintiff's RFC. The Court finds no error in the ALJ's treatment of Dr. Hyde's opinions. This assignment of error, therefore, is overruled.

**C.  The ALJ properly obtained testimony from the vocational expert (VE) and his step five finding is supported by substantial evidence.**

Finally, Plaintiff argues that the ALJ erred in relying on the VE testimony elicited at the hearing. Specifically, she contends that the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT) and that the VE failed to provide specific DOT numbers for the jobs identified.

Both of these arguments are without merit. Contrary to Plaintiff's argument, no conflict existed between the VE's testimony and the DOT, as the DOT was silent as to the availability of a sit/stand option for these positions. As such, it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions. See Hynes v.

16

Barnhart, No. Civ. 04CV490SM, 2005 WL 1458747, at *4 (D.N.H. Jun. 15, 2005). Consequently, the ALJ posed a hypothetical question to the vocational expert, which encompassed all of the limitations included in the ALJ's RFC assessment, including the limitation reflecting Plaintiff's need for a sit/stand option. The VE responded by opining that Plaintiff could perform the jobs of crossing guard, food prep worker, cafeteria line worker, bartenders helper, light maid, and non-farm animal care worker. Since the VE had an on-going knowledge of local vocational practices, he was qualified to determine which jobs Plaintiff could perform, and the ALJ properly relied on his testimony in finding that Plaintiff could perform other work that existed in significant numbers in the national economy. See Moffett v. Apfel, No. Civ. A. 99-0915-P-S, 2000 WL 1367991, at *8 (S.D. Ala. Sep. 1, 2000).

Next, Plaintiff calls attention to the fact that the VE did not provide the DOT numbers that corresponded to the jobs of crossing guard, food prep worker, cafeteria line worker, bartenders helper, light maid, and non-farm animal care worker. As a result, Plaintiff argues that remand is required, since it cannot be determined if those jobs could have been performed, as generally done in the national economy, in light of the ALJ's RFC assessment. Plaintiff, however, fails to show how she was prejudiced by the VE's failure to provide

17

the DOT numbers corresponding to the jobs identified at the hearing. See Brock v. Chater, 84 F.3d 726, 728-729 (5th Cir. 1996). Indeed, as the Commissioner notes in his brief [Doc. 10 at 17], the job of crossing guard (alternate title of school-crossing guard) has a DOT number of 371.567-010; the job of cafeteria attendant has a DOT number of 311.677-010; and the job of cleaner/housekeeper (alternate title of maid) has a DOT number of 323.687-014. See U.S. Dep't of Labor, DOT, 1991 WL 673079, 1991 WL 672694, 1991 WL 672783 (4th ed. 1991).[3] As a result, the Court concludes that Plaintiff was not prejudiced by the VE's failure to provide the DOT numbers corresponding to the jobs identified at the ALJ hearing. Substantial evidence supports the ALJ's finding that Plaintiff could perform other work existing in significant numbers in the national economy.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

---

[3] The Commissioner concedes that the jobs of bartender's helper is a medium exertional job that exceeds Plaintiff's assessed RFC, and that the jobs of food prep worker and non-farm animal care worker may not be readily identified in the DOT. [Doc. 10 at 17]. Regardless, the other jobs identified by the VE constitute substantial evidence to support the ALJ's step-five finding.

18

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Judgment on the Pleadings [Doc. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 30, 2011

Martin Reidinger
United States District Judge